## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES IMBERGAMO,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:04-0292** |
| **v.** | : | **(MANNION, M.J.)** |
| **WILLIAM CASTALDI, SANDRA VANLUVENDER, JAMES HENNIGAN, MICHAEL MULVEY, KEVIN VARCOE, TAFTON FIRE COMPANY, INC., and DOUGLAS CARRICK,** | : : : | |
| | : | |
| **Defendants** | : | |
| | : | |

## MEMORANDUM AND ORDER

Pending before the court is a motion for summary judgment on Count II of the plaintiff's amended complaint filed on behalf of defendants Castaldi, Hennigan, Mulvey, VanLuvender, and Varcoe, (collectively referred to as "State Police Defendants"), (Doc. No. 48).  Based upon the court's review of the record in this action, the motion for summary judgment filed on behalf of the State Police Defendants will be granted.


## I.  PROCEDURAL HISTORY

The plaintiff initiated the instant civil rights action pursuant to 42 U.S.C. § 1983 on February 9, 2004, in which he named only the State Police Defendants.  (Doc. No. 1).  By order dated October 6, 2004, the plaintiff was

permitted to file an amended complaint adding defendants Tafton Fire Company, Inc. and Carrick[1].  (Doc. Nos. 16 & 17).  On October 21, 2004, the State Police Defendants filed an answer to the plaintiff's amended complaint. (Doc. No. 18).

On May 16, 2005, the State Police Defendants filed the instant motion for summary judgment on Count II of the plaintiff's amended complaint.  (Doc. No. 48).  A statement of material facts, (Doc. No. 55), a supporting brief, (Doc. No. 56), and supporting exhibits, (Doc. No. 57), were filed by the State Police Defendants on May 27, 2005.  The plaintiff filed a brief in opposition to the State Police Defendants' motion for summary judgment on June 14, 2005. (Doc. No. 59).  In addition, the plaintiff filed a counter statement of facts, (Doc. No. 60), and supporting exhibits, (Doc. No. 61).  On June 27, 2005, the State Police Defendants filed a reply brief.  (Doc. No. 62).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[1]Counsel for the plaintiff and for defendants Tafton Fire Company, Inc. and Carrick having informed the court that they have resolved and settled this matter, by order dated September 28, 2005, the court dismissed the instant action with respect to those defendants.  (Doc. No. 88).

moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56©).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56©) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  Id.  The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party."  Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted).  Material facts are those which will effect the outcome of the trial under governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The court may not weigh the

evidence or make credibility determinations.  <u>Boyle v. County of Allegheny</u>,
139 F.3d 386, 393 (3d Cir. 1998).  In determining whether an issue of material
fact exists, the court must consider all evidence and inferences drawn
therefrom in the light most favorable to the nonmoving party.  <u>Id.</u> at 393.

If the moving party meets his initial burden, the opposing party must do
more than raise some metaphysical doubt as to material facts, but must show
sufficient evidence to support a jury verdict in its favor.  <u>Id.</u>

## III.  DISCUSSION

In support of their motion for summary judgment on Count II of the
plaintiff's amended complaint, the State Police Defendants have submitted a
statement of material facts[2] supported by various exhibits, which establish that
on August 25, 2003, defendants VanLuvender and Castaldi were dispatched
to investigate an incident at the Tanglewood Development.  (Doc. No. 55, ¶
5; Doc. No. 57, Ex. C, pp. 8-9, Ex. D, pp. 9-10).  This incident involved fellow
State Police Defendants Hennigan, Mulvey, and Varcoe.  (Doc. No. 55, ¶ 6;
Doc. No. 57, Ex. C, p. 10, Ex. D, p. 10).

Defendant VanLuvender testified at her deposition that she was told
"that a man had become combative, they [State Police Defendants Hennigan,

---

[2]Any challenges by the plaintiff to the State Police Defendants'
statement of material facts are noted herein.

4

Mulvey, and Varcoe] ended up taking him to the ground at some point during the situation and he sustained several broken bones." (Doc. No. 55, ¶ 7; Doc. No. 57, Ex. D, pp. 10-11).   Defendant Castaldi similarly testified at his deposition that he was told that "Troopers Hennigan, Mulvey, and Varcoe were involved in an incident at Tanglewood with Tafton ambulance and that a male with diabetes assaulted them and sustained two broken bones." (Doc. No. 55, ¶ 8; Doc. No. 57, Ex. C, p. 10)[3].

Defendants VanLuvender and Castaldi went to the Tanglewood Development.  (Doc. No. 55, ¶ 9; Doc. No. 57, Ex. C., p. 12, Ex. D, p. 12). Upon arrival, the following individuals were present: State Police Defendant Varcoe; Donna Ambrosio, the plaintiff's girlfriend; Richard Kneuer, the plaintiff's friend; and Dave Armanini, Ms. Ambrosio's son.  (Doc. No. 55, ¶ 10; Doc. No. 57, Ex. C, p. 12, Ex. D, pp. 12-13).

Defendants Castaldi and VanLuvender spoke with defendant Varcoe, who they testified informed them of the following:

> ▸ He and defendants Hennigan and Mulvey had been dispatched to assist an ambulance with a diabetic male who was combative. (Doc. No. 55, ¶¶ 11[4]-12[5]; Doc. No. 57, Ex. C, p. 15, Ex. D,

---

[3]The plaintiff agrees with the substance of the State Police Defendants' assertions at ¶¶ 7-8 of their statement of material facts, but disputes that he was actually combative.

[4]In responding to ¶ 11 of the State Police Defendants' statement of (continued...)

p. 14).

- ▸ When he and defendants Hennigan and Mulvey arrived on the scene, they were told that the plaintiff had run into the woods. (Doc. No. 55, ¶ 13; Doc. No. 57, Ex. C, p. 15, Ex. D, p. 14).
- ▸ He and defendants Hennigan and Mulvey walked down the street and heard the plaintiff yelling[6].
- ▸ As he and Defendants Hennigan and Mulvey approached the plaintiff, he made a comment about getting the flashlight out of his eyes. (Doc. No. 55, ¶ 15; Doc. No. 57, Ex. C, p. 16, Ex. D, pp. 14-15).
- ▸ The plaintiff lunged at defendant Hennigan[7].

_____

[4](...continued)
material facts, the plaintiff admits to the allegations contained therein, but notes that there is no reference to defendants Castaldi and VanLuvender speaking to defendant Varcoe on page 8, lines 8-12 of defendant VanLuvender's deposition transcript as cited to by the defendants in their statement of material facts. For the record, the court notes that the plaintiff is correct. The information is not contained at page 8, lines 8-12 of defendant VanLuvender's deposition transcript, it is contained at page 14, lines 10–25 and page 15, lines 1-13.

[5]In response to ¶ 12 of the State Police Defendants' statement of material facts, the plaintiff admits that this was the deposition testimony of defendants Castaldi and VanLuvender, but again denies that he was at any time combative.

[6]The plaintiff does not dispute that he was yelling, but does dispute what he was yelling about. Defendants Castaldi and VanLuvender testified that they were informed that the plaintiff was yelling about who called the cops. (Doc. No. 47, Ex. C, p. 15, Ex. D, p. 14). The plaintiff testified that he was arguing with his girlfriend about who called the ambulance. (Doc. No. 57, Ex. E, pp. 124, 131, 144-45).

[7]The plaintiff disputes that he "lunged" at defendant Hennigan. Instead, the plaintiff has provided the deposition testimony of his friend, Richard
(continued...)

(Doc. No. 55, ¶ 16; Doc. No. 57, Ex. C, p. 16, Ex. D, p. 15).

▸    He and defendants Hennigan and Mulvey took the plaintiff to the ground.  (Doc. No. 55, ¶ 17; Doc. No. 57, Ex. C, p. 16, Ex. D, p. 15).

▸    The plaintiff was subsequently transported to Wayne Memorial Hospital.  (Doc. No. 55, ¶ 18; Doc. No. 57, Ex. C, p. 16, Ex. D, p. 15).

After speaking to defendant Varcoe, defendant VanLuvender testified that she spoke with the plaintiff's friend, Richard Kneuer, to get his account of the incident.  (Doc. No. 55, ¶ 19; Doc. No. 57, Ex. D, p. 15).  Defendant VanLuvender testified that Mr. Kneuer informed her that the plaintiff lunged at a trooper[8] and that the troopers took him to the ground.  (Doc. No. 55, ¶ 20; Doc. No. 57, Ex. D, p. 16).

Defendant Castaldi testified that he interviewed the plaintiff's girlfriend, Donna Ambrosio, who indicated that the plaintiff became irate and wanted to fight the police because they shined a flashlight in his eyes at which time the troopers put him on the ground[9].  (Doc. No. 55, ¶¶ 21-22; Doc. No. 57, Ex. C,

---

[7](...continued)
Kneuer, who testified that the plaintiff "walked briskly towards [the defendants], waving his arms, saying, get the flashlights out of my eyes." (Doc. No. 61, Ex. 1, pp. 22-23).

[8]See n.7.  In addition, Mr. Kneuer testified at his deposition that he did not tell the police that the plaintiff charged at or pushed any of the troopers. (Doc. No. 61, Ex. 1, p. 101).

[9]The plaintiff disputes that Ms. Ambrosio told defendant Castaldi that the plaintiff became irate and wanted to fight the police because they shined a (continued...)

pp. 17, 20, Ex. D, p. 15).

Defendant Castaldi testified that he also interviewed Dave Armanini, Ms. Ambrosio's son, who indicated that as the troopers approached the plaintiff, he became irate and approached them in a combative manner with his hands in the air[10]. (Doc. No. 55, ¶¶ 23-24; Doc. No. 57, Ex. C, pp. 22-23).   Mr. Armanini further indicated that the plaintiff pushed one of the troopers at which time the troopers put him on the ground.  (Doc. No. 55, ¶ 25; Doc. No. 57, Ex. C, pp. 11-12).

Defendants Castaldi and VanLuvender testified that they proceeded to the Wayne Memorial Hospital where they spoke with defendants Mulvey and

---

[9](...continued)
flashlight in his eyes.  There is nothing, however, in the two pages of excerpts from Ms. Ambrosio's testimony submitted by the plaintiff to indicate otherwise. Excerpts from Ms. Ambrosio's deposition do indicate that she testified that the plaintiff could not see the troopers because they were shining their flashlights in his eyes and he is blind in one eye and cannot see at night.  In addition, Ms. Ambrosio testified that as the troopers approached the plaintiff "he got nervous and started fighting with them."  She later indicated that by "fighting" she meant that the plaintiff was trying to get the troopers off of him.  Ms. Ambrosio further testified that she did not know whether it was the troopers or the plaintiff who made first contact.  (Doc. No. 61, Ex. 2, pp. 65, 73).

[10]The plaintiff again denies becoming irate and approaching the troopers in a combative manner.  Referring to the previously cited testimony of Mr. Kneuer, the plaintiff indicates that he was waving his arms in front of him in an attempt to get the troopers' flashlights out of his eyes.  (Doc. No. 60, ¶ 24). The plaintiff has not, however, provided anything from Mr. Armanini to indicate that defendant Castaldi's account of what he was told by Mr. Armanini was anything other than what he stated.

8

Hennigan separately[11]. (Doc. No. 55, ¶¶ 26-27; Doc. No. 57, Ex. C, p. 26, Ex. D, pp. 20, 23).  According to the testimony of defendants Castaldi and VanLuvender, defendants Mulvey and Hennigan relayed the following information:

> ‣ As defendants Hennigan, Mulvey, and Varcoe approached the plaintiff, they could hear him yelling something to the effect of why did you call the police[12]. (Doc. No. 55, ¶ 28; Doc. No. 57, Ex. C, pp. 26-27, Ex. D, p. 23).
> ‣ Defendant Mulvey stated that the plaintiff made a comment to get the flashlight out of his eyes. (Doc. No. 55, ¶ 29; Doc. No. 57, Ex. C, p. 27).
> ‣ Defendant Mulvey indicated that the plaintiff approached the troopers in a combative and fast manner[13]. (Doc. No. 55, ¶ 30; Doc. No. 57, Ex. C, p. 27, Ex. D, p. 23).
> ‣ Both defendants Mulvey and Hennigan indicated that the plaintiff lunged at defendant Hennigan and that defendant Hennigan blocked the strike. (Doc. No. 55, ¶ 31; Doc. No. 57, Ex. C, p. 27-28, Ex. D, p. 23).
> ‣ Both defendants Mulvey and Hennigan indicated that the troopers physically grabbed

---

[11]The plaintiff notes that there is no reference to defendants Castaldi and VanLuvender conducting separate interviews with defendants Mulvey and Hennigan on the referenced pages. Defendant Castaldi's deposition indicates that he interviewed defendants Mulvey and Hennigan and that defendant Hennigan was not present when he was questioning defendant Mulvey. (Doc. No. 57, Ex. C, pp. 26-28). Defendant VanLuvender simply testified that she spoke to both defendants Mulvey and Hennigan "[a]t one point or another" while at Wayne Memorial. (Doc. No. 57, Ex. D, pp. 20, 22-23).

[12]See n.6.

[13]See nn.3, 7.

the plaintiff, placed him on the ground[14], and handcuffed him. (Doc. No. 55, ¶ 32; Doc. No. 57, Ex. C, pp. 27-28, Ex. D, p. 23).

◄     Both defendants Mulvey and Hennigan stated that, once on the ground, the plaintiff flailed his arms and legs[15]. (Doc. No. 55, ¶ 33; Doc. No. 57, Ex. C, pp. 27-29).

In conducting interviews, neither defendant Castaldi nor defendant VanLuvender interviewed the plaintiff. (Doc. No. 55, ¶ 34; Doc. No. 57, Ex. C, p. 37, Ex. D, p. 25).

On the day following the incident in question, August 26, 2003, defendants Castaldi and VanLuvender charged the plaintiff with aggravated assault, a felony in the second degree[16]; simple assault, a misdemeanor in the

---

[14]The plaintiff disputes being "placed" on the ground. Instead, the plaintiff indicates that the defendants struck him from behind, kicked his leg out from underneath him, knocked him to the ground, stepped on his back and head, pushed his chest into the ground, hit his elbow and twisted his arm behind his back, broke his arm and leg, and exacerbated a previous chest injury. (Doc. No. 60, ¶ 32).

[15]The plaintiff disputes this fact indicating that he could not kick his legs because his leg was broken. Moreover, the plaintiff cites to an excerpt from Mr. Kneuer's deposition, which indicated that, once the plaintiff was on the ground, he was not combative and was "calmly" asking for the defendants to get off of his chest. (Doc. No. 60, ¶ 33; Doc. No. 61, Ex. 1, p. 25).

[16]See 18 Pa.C.S. § 2702(a)(3)(aggravated assault defined).

10

second degree[17]; and harassment, a summary offense[18].  (Doc. No. 55, ¶ 35; Doc. No. 57, Ex. C, p. 35; Ex. D, p. 24; Doc. No. 60, ¶ 35).  The complaint was filed in the magisterial district court as <u>Commonwealth v. James Michael Daniel Imbergamo</u>, No. CR-87-03.  (Doc. No. 55, ¶ 36; Doc. No. 57, Ex. B; Doc. No. 60, ¶ 36).  A warrant was issued for the plaintiff's arrest on the same day.  (Doc. No. 55, ¶ 37; Doc. No. 57, Ex. J).

The plaintiff was arrested and subsequently arraigned on September 1, 2003.  (Doc. No. 55, ¶ 38; Doc. No. 57, Ex. E, p. 194, Ex. F, ¶ 31, Ex. J).  As a result of his arrest, the plaintiff was incarcerated at the Pike County Correctional Facility for a period of time[19].  (Doc. No. 55, ¶ 39).

On September 23, 2003, the plaintiff appeared in magisterial district court for his preliminary hearing, at which time he was represented by private counsel.  (Doc. No. 55, ¶¶ 40-41; Doc. No. 57, Ex. A, ¶¶ 2, 11-12, Ex. E, p. 220, Ex. F, ¶ 32).  Also present at the plaintiff's preliminary hearing was

---

[17]<u>See</u> 18 Pa.C.S. § 2701(a)(1)(simple assault defined).

[18]<u>See</u> 18 Pa.C.S. § 2709(a)(1)(harassment defined).

[19]There is a discrepancy as to how long the plaintiff was actually incarcerated at the Pike County Correctional Facility.  The plaintiff testified that he was incarcerated for a period of eight days.  (Doc. No. 57, Ex. E, pp. 200, 203, 223).  However, plaintiff's counsel indicates that the plaintiff was incarcerated from his arraignment on September 1, 2003, through his preliminary hearing on September 23, 2003.  (Doc. No. 60, ¶ 39, n.2).  For purposes of the instant motion, the plaintiff's actual time of incarceration is of no consequence.

Assistant District Attorney Raymond Tonkin, who was there to prosecute the matter on behalf of the Commonwealth.  (Doc. No. 55, ¶ 42; Doc. No. 57, Ex. A, ¶ 12).  Mr. Tonkin and the plaintiff's attorney negotiated a plea, the terms of which were that, in exchange for the Commonwealth dismissing the charges of aggravated assault, simple assault, and harassment, the plaintiff would enter a plea of guilty to one count of disorderly conduct and receive a sentence of a fine plus costs[20].  (Doc. No. 55, ¶¶ 43-44; Doc. No. 57, Ex. A, ¶ 14, Ex. E, pp. 221-22).  The factual basis of the guilty plea was that set forth in the affidavit of probable cause in support of the original complaint, which indicated that the plaintiff had engaged in fighting with members of the State Police[21].  (Doc. No. 55, ¶ 45; Doc. No. 57, Ex. A, ¶ 15, Ex. B, Ex. G).  The

---

[20]Although the plaintiff, himself, testified that the disposition at his preliminary hearing was the result of a plea bargain, (Doc. No. 57, Ex. E, pp. 218-22), his present counsel denies that any plea agreement existed.  He does, however, agree that the plaintiff entered a plea of guilty to a charge of disorderly conduct and that he received a sentence of a fine plus court costs. (Doc. No. 60, ¶¶ 43-44).

[21]Initially, plaintiff's counsel takes issue with the date of the incident as set forth in the State Police Defendants' statement of material facts.  The court agrees that the correct date of the incident was August **25**, 2003, not August **23**, 2003, as set forth in the State Police Defendants' statement of material facts.  This is clearly a typographical error, as the statement relies on the criminal complaint which identifies the date of the incident as August 25, 2003.

Plaintiff's counsel also takes issue with the factual basis of the guilty plea. To this extent, counsel argues that it was "the public at large" which was the victim of the offense, not any of the defendants.  In addition, counsel argues that the basis of the charge was "tumultuous behavior," not fighting.
(continued...)

plaintiff agreed to the terms of the plea agreement and entered a plea of guilty to one count of disorderly conduct for fighting with the State Police on August 23, 2003[22]. (Doc. No. 55, ¶ 46; Doc. No. 57, Ex. A, ¶ 16, Ex. H). The District Justice found that the plaintiff knowingly, voluntarily, and intelligently entered the plea of guilty to "disorderly conduct engage in fighting[23]." (Doc. No. 55, ¶ 47; Doc. No. 57, Ex. A, ¶ 17, Ex. G). The District Justice accepted the plea and sentenced the plaintiff to $427.00 in fines and costs. (Doc. No. 55, ¶ 49; Doc. No. 57, Ex. A, ¶ 19, Ex. I). The plaintiff never sought to rescind his plea of guilty and never appealed his conviction or sentence. (Doc. No. 55, ¶ 50; Doc. No. 57, Ex. A, ¶ 20).

Based upon the above facts, the State Police Defendants have moved for summary judgment on Count II of the plaintiff's amended complaint which sets forth a claim for malicious prosecution against all of the State Police Defendants. (Doc. No. 48).

---

[21](...continued)
However, the affidavit of probable cause submitted in support of the criminal complaint, as well as the guilty plea colloquy, the guilty plea form, the order imposing sentence, and the transcript docket all clearly show that the basis of the plea was for "disorderly conduct engage in fighting" based upon the criminal complaint and supporting affidavit filed on August 26, 2003, to CR-87-03. (Doc. No. 57, Exs. B, G-J).

[22]Again, plaintiff's counsel disputes that there was a plea agreement and the factual basis of the plaintiff's plea. See nn.20-21.

[23]See n.21.

13

In order to prove a malicious prosecution claim under § 1983, the plaintiff must establish that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

The State Police Defendants initially argue that they are entitled to judgment as a matter of law on the plaintiff's malicious prosecution claim because the plaintiff cannot establish that the criminal proceeding initiated against him ended in his favor. To this extent, they argue that the plaintiff's plea of guilty to disorderly conduct precludes his claim for malicious prosecution. (Doc. No. 56, pp. 4-8).

Under Pennsylvania law, and according to the Restatement (Second) of Torts § 659 (1976), which the Pennsylvania Supreme Court has adopted in this context, criminal proceedings are terminated in favor of the accused by:

> (a) a discharge by a magistrate at a preliminary hearing; or
> (b) the refusal of a grand jury to indict; or
> ©) the formal abandonment of the proceedings by the public prosecutor; or
> (d) the quashing of an indictment or information; or
> (e) an acquittal; or
> (f) a final order in favor of the accused by a trial or

14

appellate court.

Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)(citing Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993)).

The Pennsylvania Supreme Court has found that, if the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong necessary to maintain a malicious prosecution claim under § 1983.   Hilfirty, 91 F.3d at 580 ("Indeed, the Pennsylvania Supreme Court has previously held that a prosecutor's decision to withdraw criminal charges pursuant to a compromise with the accused is not considered to be a termination sufficiently favorable to support a malicious prosecution claim."  (citing Alianell v. Hoffman, 176 A. 207 (Pa. 1935)).

In this case, the State Police Defendants have offered evidence that the plaintiff was charged with aggravated assault, simple assault, and harassment.  When the plaintiff appeared for his preliminary hearing on these charges, his private counsel negotiated a plea agreement with the assistant district attorney.  The terms of the plea agreement were that, in exchange for the Commonwealth agreeing to dismiss the charges of aggravated assault, simple assault, and harassment, the plaintiff would enter a plea of guilty to one count of disorderly conduct and receive a sentence of a fine plus costs. (Doc. No. 55, ¶¶ 43-44; Doc. No. 57, Ex. A, Ex. E, pp. 218-22).

In response to the State Police Defendants' initial contention, plaintiff's

15

counsel argues that there is no evidence of a plea agreement in the record. Despite counsel's claim, the record does contain the declaration of Raymond J. Tonkin, the Assistant District Attorney who represented the Commonwealth in the plaintiff's state criminal proceedings, which provides that a plea agreement did, in fact, exist.  The record also contains the plaintiff's own deposition testimony which establishes that he entered into a plea agreement with the assistant district attorney at his preliminary hearing.  To this extent, the plaintiff's testimony reflects:

> Q.   Can you explain to me what happened when you went before the Judge the second time[24]?
>
> A.   He turned around and told me obviously I made some bad decisions that's why I wound up there.  And I said, yes, Your Honor. He asked me if I was going to make any kind of decisions like that again and I said, no.  And I was free to go.
>
> Q.   Did you have to enter a plea while you were there?
>
> A.   I plea bargained.  I was brought up on three charges, okay.  They were dropped and there were some other charge that was brought up on me.
>
> Q.   I'm going to show you a copy of your criminal complaint which has your charges.  And I just want to make sure I understand what you plead

---

[24]The plaintiff initially appeared before the court on September 1, 2003, for an arraignment.  His second appearance was for his preliminary hearing on September 23, 2003.

to.

\*   \*   \*

Q.    If you look at the second page, it has what the charges are.    Okay, we're looking at Defendant's Exhibit Two, which is the police criminal complaint.

A.    Right.  Now, these were dropped at the hearing.

Q.    Can you tell me what was dropped?

A.    Simple assault, aggravated assault and harassment, all three, were dropped.

Q.    What did you plead guilty to?

A.    A misdemeanor of some sort.   I don't remember.   I believe I was told it was a misdemeanor.  The lawyer we hired, okay, he's the one that arranged all this.

Q.    So you had a lawyer, not a public defender represent you?

A.    Correct.

\*   \*   \*

Q.    Is what they plead to what is handwritten on this complaint, if you know?

A.    I really don't know.  They way they explained to me it's really nothing major as long as I'm not like a rapist or bank robber where it would be my second offense, instead of doing five years, I would do ten years if I got arrested for something.  That's the way it was explained to me.  And I had no problem with that because I'm not that way anyways.

17

Q.    I just wanted to make sure I understand the plea bargain.  Did you agree to plea to the charge that's handwritten in here in exchange for them withdrawing the aggravated assault, simple assault and harassment?

A.    Yes.

*   *   *

Q.    Okay.  That's fine.  But is it your understanding that that's what you plead to?

A.    Disorderly conduct, yes.

(Doc. No. 57, Ex. E, pp. 218-22).

It is apparent then from the plaintiff's own testimony that a plea agreement was, in fact, entered into in the plaintiff's criminal case, the terms of which included the dismissal of the initial three charges of aggravated assault, simple assault, and harassment, in exchange for the plaintiff entering a plea of guilty to the charge of disorderly conduct.

Counsel for the plaintiff further argues that a plea agreement could not have existed, as any such agreement would not comport with Pennsylvania criminal law and procedure relating to court cases and would, therefore, be "illegal."  To this extent, any challenge to the legality of the plaintiff's criminal proceedings should have been raised in state court by way of an appeal.  The plaintiff failed to either challenge his guilty plea or appeal his conviction or sentence.  Therefore, the plaintiff cannot now challenge the plea agreement which was entered into or argue that his criminal proceedings were somehow

18

"illegal." Heck v. Humphrey, 512 U.S. 477, 484-88 (1994).

Counsel for the plaintiff further argues that the plaintiff testified at his deposition that he only entered a plea of guilty to the charge of disorderly conduct to get out of jail. The motivation behind the plaintiff entering into the compromise with the prosecutor is irrelevant. The fact is that the plaintiff, who was represented by private counsel, was offered conditions by the prosecutor and he accepted those conditions. Ultimately, the arrangement was approved by the court and the assault and harassment charges were dismissed in exchange for the plaintiff entering a plea of guilty to the disorderly conduct charge. Regardless of his reasons for entering into the compromise, the plaintiff cannot now benefit from the termination of his proceedings and assert a claim innocence which he had previously abandoned. See Junod v. Bader, 458 A.2d 251, 253 (Pa.Super. 1983) ("if the charges are dropped as a result of a compromise, our courts conclude that the accused placed a higher value on peace than on establishing innocence" and, as a result, the court "will not allow him to burden the courts or another party with a [malicious prosecution] action in which the accused, no longer himself at risk, asserts the same claim of innocence that he earlier abandoned."). See also Hall v. Society for the Prevention of Cruelty to Animals, 27 Pa. D&C 3d 34 (Pa.Com.Pl. 1983)(court refused to allow the plaintiff to use compromised termination of proceedings as a basis for malicious prosecution claim regardless of the prosecutor's or

the plaintiff's motivation for entering into the compromise).

Based upon the foregoing, the court finds that, even considering all inferences in a light most favorable to the plaintiff, the plaintiff has failed to establish an essential element of his malicious prosecution claim, (i.e., that the criminal proceeding initiated against him ended in his favor).  Therefore, the State Police Defendants' motion for summary judgment on Count II of the plaintiff's amended complaint will be granted on this basis.

In further support of their motion for summary judgment, the State Police Defendants argue that the existence of probable cause to support the charges against the plaintiff for assault and harassment precludes the plaintiff's claim of malicious prosecution.  (Doc. No. 56, pp. 8-12).

The issue of whether probable cause existed in effecting an arrest is typically one for the jury.  Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).  However, "a district court may conclude 'that probable cause did exist as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding,' and may enter summary judgment accordingly."  Id. (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

"[A] conviction, upon examination by a judicial officer, conclusively establishes the existence of probable cause, regardless of whether the conviction is subsequently reversed on appeal."  Hamidian v. Occulto, 854

20

F.Supp. 350 (M.D.Pa. 1994)(quoting Bussard v. Neil, 616 F.Supp. 854, 857 (M.D.Pa. 1985)).

In this case, as discussed above, there is no legitimate dispute that the plaintiff entered into a plea agreement with the assistant district attorney, the terms of which were that the plaintiff was to enter a plea of guilty to the charge of disorderly conduct based upon the facts supporting the underlying affidavit of probable cause in exchange for the assault and harassment charges being dismissed. The disorderly conduct charge was based upon the same affidavit of probable cause relied upon to bring the assault and harassment charges. The District Justice found that the plaintiff knowingly, voluntarily, and intelligently entered the plea of guilty to "disorderly conduct engage in fighting" based upon the original affidavit of probable cause. The plaintiff's guilty plea, therefore, conclusively establishes the existence of probable cause.

In addition, "'probable cause to arrest exists when the facts and circumstances within the arresting officers' knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" Marasco, 318 F.3d at 514(quoting Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995)). In determining whether probable cause existed, the court should consider the objective facts available to the officer at the time of the arrest and determine whether these facts were sufficient to justify a reasonable belief

21

that the individual committed a crime.  Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000).

In this case, even resolving the disputed facts in favor of the plaintiff, the record reflects that defendants Castaldi and VanLuvender were informed that defendants Hennigan, Mulvey, and Varcoe had responded to a call to assist an ambulance with a diabetic male who was combative.  When defendants Hennigan, Mulvey, and Varcoe approached the plaintiff, he was yelling. Defendants Hennigan, Mulvey, and Varcoe, as well as two eyewitnesses, (i.e., Ms. Ambrosio and Mr. Armanini) gave statements to defendants Castaldi and VanLuvender that the plaintiff lunged at defendant Hennigan, at which point he was taken to the ground.  Based upon this information, a reasonable person could conclude that there was probable cause to believe that the plaintiff had committed at least one of the crimes for which he was charged. See generally Estate of Smith, Id.

Considering the above and, again, viewing all inferences in a light most favorable to the plaintiff, the court finds that the plaintiff has also failed to establish that the criminal proceeding was initiated against him without probable cause.  Therefore, the State Police Defendants' motion for summary judgment on Count II of the plaintiff's amended complaint will be granted on this basis as well.

## V.  CONCLUSION

Based upon the foregoing,

**IT IS HEREBY ORDERED THAT:**

**(1)** the State Police Defendants' motion for summary judgment on Count II of the plaintiff's amended complaint, **(Doc. No. 48)**, is **GRANTED** in its entirety;

**(2)** the Clerk of Court is directed to enter judgment in favor of the State Police Defendants and against the plaintiff on Count II of the plaintiff's amended complaint; and

**(3)** there being no remaining claims against State Police Defendants Castaldi and VanLuvender, the Clerk of Court is directed to terminate the instant action with respect to these defendants.


<u>**s/ Malachy E. Mannion**</u>
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** October 4, 2005

O:\shared\Memoranda\2004 MEMORANDUMS\04-0292.wpd

23